Richard Mooney, Esq. (SBN: 176486)
RJM Litigation Group
505 Montgomery St. #1100
San Francisco, CA 94111
415.874.3711
richard.mooney@rjmlitigation.com

Attorneys for Defendant and Counterclaimant
Uplift, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Melissa Anjinette Carrasco,<br><br>    Plaintiff,<br><br>    v.<br><br>Bank of America and Uplift, Inc.,<br><br>    Defendants.<br><br>*and related counterclaim* | Case No. 20-cv-05833 JST<br><br>**Uplift's Opposition to Plaintiff's Motion for Leave To File a Second Amended Complaint**<br><br>Date:   August 27, 2021<br>Time:  2:00 p.m.<br>Crtrm: 6 (Oakland Division) |

1    **I.      INTRODUCTION**

2              Nearly six months after the deadline for adding new claims and new parties,

3    Plaintiff on July 16 filed a *Motion for Leave To File a Second Amended Complaint* (the "Motion"),

4    which seeks leave to file a new complaint that adds a claim against Uplift and adds two new claims

5    against a new Defendant, Credit Corp. Solutions, Inc. ("Credit Corp.").  The fact that the motion

6    for leave is presented nearly six months after the deadline and nearly four months after Plaintiff

7    learned of the supposed basis for the new claim and Defendant is by itself sufficient reason to deny

8    the motion.  Even if it were not, the proposed supplemental complaint as it pertains to Uplift (1)

9    states an entirely separate cause of action based on completely separate conduct that is properly

10   challenged in a separate suit if at all, and (2) is futile in the sense that it would not survive a motion

11   to dismiss.  Each of these facts is independently-sufficient reason to deny the motion, even setting

12   aside the scheduling issues.

13   **II.     BACKGROUND**

14            **A.      Factual Background**

15            Uplift is a successful and growing company that works with various travel partners

16   to enable consumers to purchase travel services with a closed-end loan, so they can pay over time

17   by making payments over time instead of immediately.  *See* Declaration of Richard Mooney filed

18   herewith ("Mooney Decl.") ¶ 2.  In the currently-operative First Amended Complaint (Docket No.

19   9; the "Complaint"), Plaintiff alleges that (1) a loan taken out in Plaintiff's name to purchase plane

20   tickets for Plaintiff and three others was not in fact taken out by Plaintiff, and (2) Uplift did not

21   conduct a reasonable investigation of Plaintiff's identity-theft claim before reporting to Equifax.

22   *See* Complaint ¶¶ 89-95, 113-22.  The putative harm alleged caused by Uplift's challenged conduct

23   is that Plaintiff was an unspecified reduction in credit score.  *Id.* ¶¶ 93-95 (no injury mentioned),

24   122 (reduced credit score and time spent sending communications).  Plaintiff does not allege actual

25   damages with anything remotely resembling specificity, and the point of the litigation appears

26

27                                         1

28

instead to be the relevant statutes' attorneys fees provisions and the hope of a settlement payment just below the cost of defending the litigation.

On their face, the claims are very weak, as there is no question that Uplift did in fact investigate and report back when requested.  However, the factual allegations are almost certainly false, as Uplift's more than reasonable investigation confirmed.  In particular, as described in an April 27, 2021 to Plaintiff's counsel (*see* Mooney Decl. ¶ 3 & Exh. A), Uplift's investigation in response to Plaintiff's claim of identity theft revealed the following:

1. Before the May 25, 2019 application for credit at issue in this litigation, Plaintiff had obtained credit via uplift in February 2019 using the same email address and phone number used in the May 25, 2019 application.  Plaintiff fully repaid the February 2019 loan and acknowledged its legitimacy via phone on May 24.

2. In the days preceding the May 25, 2019 application, Plaintiff requested a list of Uplift's travel partners, which she was provided by phone on May 24, 2019, the day before she made the May 25 application.

3. Plaintiff provided a new payment card for the second application, under the name of Ronald Ferrell, with "Ferrell" appearing based on Transunion reporting to be a former last name for Plaintiff.  The billing zip code for that card was 94597, which is the zip code for 2950 Buskirk Avenue in Walnut Creek, where Plaintiff says (Complaint ¶ 5) she lives.

4. Roundtrip airline tickets for four passengers – Melissa Carrasco the plaintiff and three others whose names appear to be associated with Ms. Carrasco – were purchased pursuant to the May 25 application.

5. Upon Ms. Carrasco initiating this dispute, Uplift confirmed with Southwest Vacations that the tickets for the outbound portion of the

itinerary (Wichita to Seattle) were in fact used.  When asked how the "identify thief" could have fooled TSA and Southwest so as to use Ms. Carrasco's plane ticket, counsel for Plaintiff understandably provided no response.

6. The person who used the four tickets called the airline to rebook the original return tickets, changing the return to a June 19 flight to Sacramento, and that call was made from Ms. Carrasco's phone number.   Again, Southwest Vacation confirms that those tickets were used.

It is of course possible that some "Jane Bond" could have obtained Plaintiff's email address and phone number; conjured payment card information that could outwit the payment card fraud detection systems of Visa and Chase Bank; evaded the security protocols of the TSA and America's fourth largest airline (twice); and spoofed Plaintiff's phone number from a different phone.  That such a scenario can be imagined, however, does nothing to support Plaintiff's claim that Uplift's investigation in response to Plaintiff's identity theft claim was somehow insufficient or unreasonable.

**B.      The Procedural History to Date**

Plaintiff filed her initial complaint on August 8, 2020 and her First Amended Complaint on September 8, 2020.  *See* Docket Nos. 1, 9.  Uplift filed its Answer on November 30, 2020, and accompanied the Answer with a counterclaim seeking repayment of the amount owned by Ms. Carrasco.  *See* Docket No. 26.  The parties filed a joint case management conference statement on January 5, 2021 (Docket No. 29), and the Court issued a Scheduling Order and Referral To Court-Sponsored Mediation on January 13, 2021 (Docket No. 31).  The Scheduling Order provided in pertinent part that (1) established January 22, 2021 as the "[d]eadline to add

parties or amend the pleadings",[1] and (2) established August 13, 2021 as the "Fact discovery cut-off".  On May 19, 2021, the parties submitted a joint case management conference statement, in which Plaintiff indicated her understanding that Uplift had sold her loan to a collection agency and announced that she "anticipates bringing a motion for leave to amend."  Docket No. 38 at 3, 5.  On May 21, the Court issued a second Scheduling Order, which canceled the May 25 case management conference and directed Uplift to file any Rule 11 Motion by July 22, 2021.[2]

With respect to discovery, Plaintiff served interrogatories and requests for production on February 2; Uplift timely responded to each on March 4; and Uplift completed its document production on April 28.  Mooney Decl. ¶ 4.  Despite Plaintiff's focus on discovery in the moving papers, the putative basis for the supplemental complaint has nothing to do with discovery; rather, the putative basis is the March 17 letter received from third party Credit Corp.  *See* Motion at 4, lines 8-10.

**C.     The Proposed New Complaint and Plaintiff's Motion**

Plaintiff's proposed new complaint, which is properly characterized as a "supplemental complaint" rather than a "second amended complaint" for reasons discussed below, seeks to add a new cause of action against Uplift and seeks to add Credit Corp Solutions Inc. ("Credit Corp.") as a new defendant.  Both additions relate to the fact that "Plaintiff received a debt collection letter, dated March 17, 2021, from Credit Corp regarding the subject Uplift account . . . ."  Motion at 6.  Based on that letter, Plaintiff's proposed new complaint alleges that Uplift sold to Credit Cop. the debt owed by Plaintiff to Uplift.  *See* Manjlai Decl. Exh. A ¶¶ 80-85, 116-20.  Based on the putative letter and alleged sale, Plaintiff seeks to assert three new causes of

---

[1]     The Court added a footnote as follows in connection with this deadline:  "After this deadline, a party may still seek amendment, but must demonstrate good cause.  Fed. R. Civ. P. 16(b)(4)."

[2]     Despite Uplift's near certainty that central allegations in Plaintiff's Complaint are intentionally false, Uplift elected to forego a Rule 11 motion in light of the high standards applicable and the difficulty of obtaining and then collecting a significant award against the individual Plaintiff based on what appear to be false statements to her counsel.

1   action.  *Id.* ¶¶ 116-20, 121-24, 125-34.  The first potential new claim, as described by Plaintiff's

2   counsel in his declaration, is that "Uplift violated the Rosenthal Fair Debt Collection Practices Act,

3   California Code § 1788.17, by continuing to pursue and litigate its counter-claim, in an attempt to

4   collect on the subject Uplift account, against Plaintiff, despite selling the subject Uplift account to a

5   debt collection agency, Credit Corp."  Manjlai Decl. ¶ 12; *see also* Manjlai Decl. Exh. A at 116-

6   20.[3]  (Although counsel for Plaintiff knew in advance of filing this motion and proposed new

7   complaint that in fact Uplift had recalled/repurchased the loan in May of this year, counsel omitted

8   that fact from the proposed new complaint, the motion in support of it, and his declaration.

9   Mooney Decl. ¶ 6 & Exh. B.)

10          The second and third potential new claims, as described by Plaintiff's counsel in his

11   declaration, are  Plaintiff wishes to add are that "that Credit Corp. violated the Fair Debt Collection

12   Practices Act . . . and Rosenthal Fair Debt Collection Practices Act" because the March 17, 2021

13   letter was "sent directly to Plaintiff in an attempt to collect on the subject Uplift account – despite

14   being aware that Plaintiff is represented by counsel."  Manjlai Decl. ¶ 12.  As detailed below, there

15   is no justification for adding three new claims and a new party so long after the Court-ordered

16   deadline, and even aside from the deadline the proposed supplemental complaint fails to satisfy the

17   requirements of Rule 15(d).

18   **III.    THE GOVERNING STANDARD**

19          **A.    The Nature of the Motion**

20          *First*, although counsel repeatedly refers to the proposed new complaint as an

21   amended complaint or an amendment to the current complaint, the proposed new complaint is in

22   fact a "supplemental" complaint rather than an amended complaint because it is based on conduct

23   that occurred after the complaint was filed.  *Cf.* FRCP 15(a)-(c) (providing rules for "amending"

24   _____

25   [3]      Plaintiff failed to submit a redline comparing the proposed new complaint to the operative
     First Amended Complaint, but it appears from a human eye comparison that the characterization is

26   fair.  Mooney Decl. ¶ 5.

27                                              5

complaints) *with* FRCP 15(d) (providing rules for a "supplemental pleading" that "set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplement"). This distinction, between an amendment addressing conduct from the time prior to the filing of the initial complaint and conduct that occurs after the initial complaint is filed, is widely recognized by the courts. *See*, *e.g.*, *Chicago Regional Council of Carpenters v. Village of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011) ("Before the complaint may be broadened to encompass subsequent events, the plaintiff must move to supplement it.  Federal Rule of Civil Procedure 15(d) provides a mechanism for doing just that."); *Habitat Education Center, Inc. v. Kimbell*, 250 F.R.D. 397, 401 (E.D. Wis. 2008) ("While an amended pleading relates to matters that occurred prior to the filing of the original pleading . . ., a supplemental pleading addresses events occurring subsequent to the initial pleading"); *Poullard v. Federal Bureau of Prisons*, 535 F.Supp.2d 146, 149 (D.D.C. 2008) (because proposed new pleading did not "allege facts pertaining to occurrences or events taking place after the date of the original Complaint, the Court does not consider it truly to be a supplemental complaint" but rather an "amended complaint").

### B.     The Standards Governing the Motion

*First*, as the Court noted in its Scheduling Order, a party seeking to amend pleadings and/or add parties after the established deadline may only do so upon a showing of "good cause" as required by Federal Rule of Civil Procedure 16(b)(4).  *See*, *e.g.*, *DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017).  As the Ninth Circuit has routinely held, "[t]he central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment." *Id.* (citing *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir. 2013)).  Indeed, a lack of diligence alone supports denial of motion to change the pleadings.  *Id.* (adopting the holding of a previous Ninth Circuit decision that "if [the] party seeking amendment 'was not diligent, the inquiry should end'") (citing/quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also*

*Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1138 (D. Idaho 2013) (absent showing of diligence, leave not properly granted).

        *Second*, if party succeeds in demonstrating the requisite diligence, a motion for leave to file a supplemental complaint must meet the requirements of Federal Rule of Civil Procedure 15(d), which provides in pertinent part that "the court may, on just terms, permit a party to serve a supplemental pleading . . . ."  Courts within the Ninth Circuit have developed several guidelines for interpreting and implementing that directive.  For instance, "[a] supplemental pleading 'cannot be used to introduce a separate, distinct and new cause of action.'"  *Mullen v. Surtshin*, 590 F.  Supp. 2d 1233, 1238 (N.D. Cal. 2008) (quoting *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotation omitted)).  Further, the "court may deny a motion to supplement when the supplemental pleading could be the subject of a separate action," while giving proper consideration to "whether permitting the supplemental pleading will promote judicial efficiency."  *Mullen*, 590 F. Supp. 2d at 1238 (citing *Neely*, 130 F.3d at 402).  Finally, at least one court has held – in the context of a proposed new pleading that both amended pre-complaint facts and supplemented with post-complaint facts, that "futility of amendment can, by itself justify the denial of a motion for leave to amend."  *Pauline v. Hawaii DPS*, 773 F. Supp. 914, 920 (D. Hawaii 2011) (quotation omitted); *see also id.* (futility exists when new complaint "would not survive a motion to dismiss"); *id.* at 925 (denying leave because "[t]he claim is therefore futile as to both the May 2010 assault [pre-filing] and the November 2010 assault [post-filing]).

**IV.**    **ARGUMENT**

        Based on the facts and the governing standard set out above, Uplift respectfully submits that the motion for leave to file a supplemental complaint is properly denied.

    **A.**    **The Scheduling Order and Rule 16(b)(4)**

        Plaintiff has shown no diligence in seeking leave.  The entire supplementation is based on a single March 17 letter, and Plaintiff did not require (and apparently did not engage in)

1  any additional investigation.  At that point, Plaintiff was already aware that the deadline to add

2  parties and claims was two months in the past.  Yet Plaintiff did not seek until July 9 at the earliest

3  (in an unauthorized letter request; the actual motion was filed July 16) – approximately 15 weeks

4  after receipt of the letter.  Plaintiff's motion offers no explanation for this nearly four-month delay.

5         This delay is particularly significant in the context of this case.  Discovery is nearly

6  closed, and the Court has set an aggressive but reasonable schedule bringing the case to trial.

7  Adding a new claim against Uplift would create significant delay as the parties litigated a motion to

8  dismiss and extended the discovery period.  And adding a new *defendant* would create even more

9  delay, effectively starting over this case that was filed 356 days ago, to the significant prejudice of

10  the two current defendants.  Balanced against this prejudice and delay is Plaintiff's desire to have a

11  jury evaluate the supposed grave injury Plaintiff suffered when (1) Uplift somehow deceived her

12  about the collection of a $2,000 debt by not dismissing a counterclaim, and (2) Credit Corp. sent a

13  letter to her rather than a lawyer that it likely had no idea existed.

14         Further, there will be no significant prejudice to Plaintiff if the motion for leave is

15  denied, as Plaintiff retains the ability to bring a separate action addressing her claims about the

16  efforts to obtain loan repayment – claims significantly different from credit reporting issues

17  currently at issue in the First Amended Complaint.

18      **B.    The Requirements of Rule 15(d)**

19         Even if Plaintiff's motion were timely or Plaintiff had at least proceeded with

20  diligence, Plaintiff cannot satisfy the obligations imposed by Rule 15(d).

21         *First*, there is no question that Plaintiff seeks "to introduce a separate, distinct and

22  new cause of action."  Indeed, all three proposed causes of action are new.  And not only are they

23  new, they relate to a completely different type of conduct.  The First Amended Complaint alleges

24  that *Equifax* and Uplift each acted improperly in 2019 and 2020 in a manner that may have

25  impacted Plaintiff's ability to obtain a credit line increase.  The proposed new complaint alleges

26  that *Credit Corp.* and Uplift acted improperly in 2020 in attempting to collect an alleged debt.  The

27

28

1    statutes and causes of action are different, the time periods are different, the types of alleged

2    conduct are different, and even the parties are different.

3            *Second*, it is apparent that "the supplemental pleading could be the subject of a

4    separate action," as there is nothing to prevent Plaintiff from filing a lawsuit against Uplift and

5    Credit Corp.  Further, permitting the two sets of disputes to proceed in one lawsuit would not

6    "promote judicial efficiency" in a manner sufficient to overcome the "separate action" doctrine.

7    There is only a tenuous relationship between the 2019-2020 claims against Uplift and the 2021

8    claims against Uplift, and there is *no* relationship between the 2019-2020 claims against Equifax

9    and the 2021 claims against Credit Corp.  Any minimal increase in efficiency created by combining

10   the two disputes into one trial is more than counterbalanced by the loss of more than a year of

11   litigation that would occur if the parties (and a new party) have to start from scratch with new

12   claims requiring new motions and new discovery.

13           *Third*, Plaintiff's putative new claims are "futile", as they are not likely to survive a

14   motion to dismiss.

15           With respect to **Uplift**, the proposed new complaint makes clear in paragraph 117

16   that a claim can be stated only if Uplift's engaged in "conduct the natural consequence of which is

17   to harass, oppress, or abuse any person"; or made a false or misleading statement or representation;

18   or used "unfair or unconscionable" means to collect a debt.  Yet even accepting as true the potential

19   allegation that Uplift sent Plaintiff's debt for collection, Plaintiff cannot point to any harassment,

20   oppression, abuse, or anything false, misleading, unfair, or unconscionable.  The *only* allegation is

21   that Uplift did not dismiss its counterclaim.  Plaintiff was fully aware of Credit Corp.'s letter and

22   was fully aware that Uplift had previously filed a counterclaim.  Indeed, Plaintiff does not allege

23   (and could not allege) that Uplift has done anything related to its counterclaim after the alleged

24   February transaction.

25           With respect to **Credit Corp.**, the proposed new complaint makes clear in

26   paragraphs 122 127, 129 131, and 133 that a claim can be stated only if Credit Corp.  was aware at

27

28

1   the time of its March 17 letter that Plaintiff was represented by counsel.  There is, however, no

2   facially plausible allegation of facts supporting a conclusion that Credit Corp. was aware that

3   Plaintiff was represented by counsel.  It is true that Plaintiff pleads the ultimate conclusion that

4   Credit Corp. was aware, as that is a necessary predicate to the claims, but pleading ultimate facts is

5   not enough in a situation in which it would be incredible for Credit Corp. to have such knowledge.

6   **V.      CONCLUSION**

7          If Plaintiff and her counsel truly believe in the merit of these new potential claims,

8   they should file a lawsuit seeking redress.  The effort to add them to this lawsuit is no more than an

9   effort to extend the resolution of the meritless and fabricated 2019-2020 claims beyond the current

10  schedule, and Uplift respectfully requests that the motion be denied.

11

12  Dated:  July 30, 2021                          RJM Litigation Group

13

14

15                                      By:   /s/ Richard J. Mooney
                                              Richard J. Mooney
16                                            Attorneys for Uplift, Inc.

17

18

19

20

21

22

23

24

25

26

27
                                          10
28              *Carrasco v. Bank of America* (Case No. 20-cv-5833)
                   Uplift Opposition to Motion for Leave To Amend